IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

___

MICHAEL BELL,

    Petitioner,

vs.                         No. 06-2150-Ml/V

TONY PARKER,

    Respondent.

___

ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

___

Petitioner Michael Bell, Tennessee Department of Correction prisoner number 101731, an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee, filed a pro se petition pursuant to 28 U.S.C. § 2254 on March 9, 2006, along with a motion seeking leave to proceed in forma pauperis. Bell paid the habeas filing fee on March 29, 2006.[1]

I.    STATE COURT PROCEDURAL HISTORY

On May 7, 1983, Bell was convicted by a jury in the Dyer County Circuit Court of second degree murder. On May 31, 1983, Bell

---

[1] The Court was unaware, at the time it issued the March 29, 2006 order denying leave to proceed in forma pauperis and directing Bell to pay the habeas filing fee, that the fee had been paid. Accordingly, Bell is in full compliance with that order. Bell paid a second habeas filing fee on April 27, 2006. The clerk is directed to refund that duplicate payment to Bell's inmate trust fund account.

was sentenced as a persistent offender to fifty (50) years imprisonment.[2] He did not take a direct appeal.

On August 8, 1989, Bell filed two pro se petitions pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -124, in the Dyer County Circuit Court. The postconviction court dismissed the petitions as untimely without appointing counsel or conducting an evidentiary hearing. The Tennessee Court of Criminal Appeals affirmed. Bell v. State, No. 5, 1991 WL 11564 (Tenn. Crim. App. Feb. 6, 1991).

On September 16, 1991, Bell filed a pro se petition for a writ of habeas corpus, pursuant to Tenn. Code Ann. § 29-21-101 et seq., in the Lake County Circuit Court in which he asserted that it was unconstitutional to consider convictions from the State of Missouri in sentencing him as a persistent offender. The trial court dismissed the petition, and the Tennessee Court of Criminal Appeals affirmed, Bell v. Rone, No. 02C01-9109-CC-00216, 1992 WL 105969 (Tenn. Crim. App. May 20, 1992), perm. app. denied (Tenn. July 27, 1992).

On November 19, 2004, Bell filed a second pro se petition for a writ of habeas corpus in the Lake County Circuit Court in which he argued, inter alia, that his conviction and sentence are

---

[2] The petition states that Bell was also convicted of conspiracy to commit murder and arson, although those convictions are not mentioned in the state-court opinions.

2

void in light of the Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). The trial court dismissed the petition, and the Tennessee Court of Criminal Appeals affirmed. <u>Bell v. Parker</u>, No. W2004-02991-CCA-R3-HC, 2005 WL 1249063 (Tenn. Crim. App. May 25, 2005), <u>perm. app. denied</u> (Tenn. Dec. 5, 2005).

II. <u>PETITIONER'S FEDERAL HABEAS CLAIMS</u>

In this federal habeas petition, Bell raises the following issues:

1. Whether he was properly sentenced as a persistent offender where the State failed to file a notice of enhancement;

2. Whether his sentence is invalid in light of <u>Blakely</u>;

3. Whether his sentence is still valid despite the repeal of the 1982 Sentencing Act under which he was sentenced; and

4. Whether his petition for a writ of habeas corpus was improperly dismissed without appointment of counsel.[3]

III. <u>ANALYSIS OF THE MERITS</u>

The first issue is the timeliness of this petition. Twenty-eight U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—

---

[3] The form petition refers to Appendices and a memorandum of points and authorities, which were not received. As this petition is plainly untimely, it is not necessary to direct the petitioner to submit them.

3

      (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and

      (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

  (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioners whose convictions became final before the effective date of the AEDPA had a one-year grace period, until April 24, 1997, to seek federal habeas relief. Brown v. O'Dea, 187 F.3d 572, 577 (6th Cir. 1999), vacated on other grounds, 530 U.S. 1257 (2000).

      Application of these provisions in this case is straightforward. Because Bell's conviction became final before April 23, 1996,[4] he had until April 23, 1997 to file a timely §

---

[4] State convictions ordinarily become "final" within the meaning of § 2244(d)(1)(A) at the expiration of the time for filing a petition for a writ of
(continued...)

4


2254 petition. He did not do so and, therefore, even if it is assumed that this petition was filed on March 4, 2006, the date on which it was signed, see Houston v. Lack, 487 U.S. 266 (1988); Miller v. Collins, 305 F.3d 491, 497-98 & n. 8 (6th Cir. 2002); Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (§ 2255 motion), it is plainly time barred.[5]

---

[4] (...continued) certiorari from a decision of the highest state court on direct appeal. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). Because Bell did not take a direct appeal, his conviction became final no later than the expiration of the time for taking a direct appeal. See Sanchez-Castellano v. United States, 358 F.3d 424 (6th Cir. 2004) (§ 2255 motion); see also United States v. Cottage, 307 F.3d 494, 499 (6th Cir. 2002) ("when a § 2255 movant does not pursue a direct appeal to the court of appeals, his conviction becomes final either on the date that the judgment was entered . . . or on the date on which the time for filing such appeal expired"; describing the latter as the "majority view"). In Tennessee, with certain exceptions that are not applicable here, a notice of appeal must be filed within thirty days of the entry of judgment. Tenn. R. App. P. 4(a). Although the petition does not disclose the precise date on which judgment was entered, it appears that Bell's conviction became final on or about May 31, 1984.

[5] The filing of the state habeas petition in 2004 did not toll the running of the limitations period for this conviction because, by that time, the limitations period had already expired. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("'The tolling provision does not . . . "revive" the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.'") (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); Owens v. Stine, No. 01-1200, 27 Fed. Appx. 351, 353 (6th Cir. Oct. 2, 2001) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

Section 2244(d)(1) provides that the limitations period begins to run from the latest of the four specified circumstances. Bell would undoubtedly contend that the third subsection is applicable here, and that the limitations period for his Blakely claim commenced running on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." In Tyler v. Cain, 533 U.S. 656, 662 (2001), the Supreme Court held that a new rule is "made retroactive to cases on collateral review" only if the Supreme Court holds it to be retroactively applicable to cases on collateral review. Because the Supreme Court did not hold that Blakely is retroactively applicable to cases on collateral review, the third subsection is inapplicable and, therefore, the limitations period began to run when Bell's conviction became final.

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308 F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors determine the appropriateness of equitably tolling a statute of limitations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Dunlap, 250 F.3d at 1008.[6]

The Sixth Circuit has stated that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv.,

---

[6] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[7]

Bell cannot satisfy his burden of demonstrating that equitable tolling would be appropriate in this case. The petition was filed almost nine years after the expiration of the limitations period. In response to a question on the form petition asking why he had not raised his issues on direct appeal, Bell asserts, vaguely, that he was "deceived by counsel into believing that he had pled guilty, and would face original charge at trial again."

---

[7] See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

7

Even if it is assumed that Bell genuinely believed that a conviction after a jury trial was, in fact, a guilty plea, he cannot establish either that it was reasonable for him to remain ignorant about the legal requirements for asserting his claim or that he was diligent in pursuing his rights.

Accordingly, the Court DISMISSES the petition as time barred.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Section 2254 Rules. The petition is DISMISSED.

IV.   APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

>   (1)   Unless a circuit justice or judge issues a
>         certificate of appealability, an appeal may not be
>         taken to the court of appeals from—
>
>         (A)   the final order in a habeas corpus proceeding
>               in which the detention complained of arises
>               out of process issued by a State court; or
>
>         (B)   the final order in a proceeding under section
>               2255.
>
>   (2)   A certificate of appealability may issue under
>         paragraph (1) only if the applicant has made a
>         substantial showing of the denial of a
>         constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the

>   whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

>   A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[8]

In this case, there can be no question that this petition is time barred and, therefore, any appeal by this petitioner on any of the issues raised in this petition does not deserve attention. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman,

---

[8] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

10

117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal <u>in forma pauperis</u> in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917,[9] the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, the prisoner must file his motion to proceed <u>in forma pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

---

[9] Effective April 9, 2006, the appellate filing fee was increased from $255 to $455.

IT IS SO ORDERED this 12th day of June, 2006.

       /s/ Jon P. McCalla      
JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE